# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| MARY ANN JANSON, | : Case No. 3:20-cv-169 |
| Plaintiff, | : Magistrate Judge Sharon L. Ovington |
| | : (by full consent of the parties) |
| vs. | : |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

## DECISION AND ENTRY

**I.**   **Introduction**

In January 2017, Plaintiff Mary Ann Janson filed an application for Disability Insurance Benefits. The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Stuart Adkins concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed the present action. She seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 11), the Commissioner's Memorandum in Opposition (Doc. No. 12), Plaintiff's Reply (Doc. No. 13), the administrative record (Doc. No. 10), and the record as a whole.

**II.     Background**

Plaintiff asserts that she has been under a disability since June 29, 2011. Plaintiff was fifty-eight years old on her date last insured. Accordingly, she was considered a "person of advanced age" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(e). She has at least a high school education.

The evidence of record related to Plaintiff's impairments is sufficiently summarized in the ALJ's decision (Doc. No. 10-2, PageID 55-63), Plaintiff's Statement of Errors (Doc. No. 11), the Commissioner's Memorandum in Opposition (Doc. No. 12), and Plaintiff's Reply (Doc. No. 13). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

**III.    Standard of Review**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. 405(g). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. 405(g); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**IV.** <u>**The ALJ's Decision**</u>

As noted previously, it fell to ALJ Adkins to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential

3

steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

> Step 1: Plaintiff has not engaged in substantial gainful activity during the period from her alleged onset date, June 29, 2011, through her date last insured, March 31, 2016.
>
> Step 2: She has the severe impairments of obesity, degenerative disc disease, heart disease, hypertension, hypothyroidism, hyperlipidemia, coronary artery disease, gastroesophageal reflux disease, and arthritis.
>
> Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: Her residual functional capacity, or the most she could do despite severe mental or physical impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work…subject to the following limitations: (1) can lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) can stand and/or walk for about six hours and sit for about six hours in and [*sic*] eight hour workday; (3) can never climb ladders, ropes and scaffolds; (4) can frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl; (5) should avoid unprotected heights and dangerous machinery."
>
> Step 4: She is capable of performing her past relevant work as a daycare worker.

(Doc. No. 10-2, PageID 57-63). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 63.

**V.  Discussion**

Plaintiff challenges several aspects of the non-disability decision. She asserts that error occurred in assessing her severe impairments at Step Two and in formulating her residual functional capacity. She also contends that contrary to the finding at Step Four, she is not capable of performing her past relevant work as a daycare worker.

4

### A. Severe Impairments and Residual Functional Capacity

Plaintiff argues that error occurred in assessing her severe impairments at Step Two. She contends that her depression should have been classified as a severe impairment, and that the failure to identify any severe mental impairments at Step Two was in error. In turn, she further contests the residual functional capacity assessment to the extent that it does not accommodate her depression and other related impairments.

Step Two of the sequential evaluation process requires the ALJ to consider whether a claimant's impairments are "medically determinable impairments" and whether such impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical laboratory diagnostic techniques" and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. Evidence from an acceptable medical source is required to establish a medically determinable impairment. *See* 20 C.F.R. § 404.1513(a) ("We need evidence from acceptable medical sources to establish whether you have medically determinable impairment(s)"). Finding a medically determinable impairment to be a severe impairment is considered a "de minimis hurdle," and "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted).

As reflected above, the ALJ determined that Plaintiff had several severe medically determinable impairments at Step Two. Most notably, however, the ALJ also concluded

5

that Plaintiff had two non-severe medically determinable impairments—neither were depression. (Doc. No. 10-2, PageID 57). In fact, depression was not addressed at all at Step Two. The relative silence as to Plaintiff's depression, coupled with the explicit consideration of her non-severe medically determinable impairments, leads the undersigned to believe that Plaintiff's depression was not considered to be medically determinable. Neither Plaintiff, nor the Commissioner, contemplated this possibility.

Nevertheless, substantial evidence supports this implicit finding. Plaintiff argues that her depression is consistently documented throughout the record, but in almost all of the records cited by Plaintiff, depression is merely listed as part of her past medical history or in a listing of problems/diagnoses. (Doc. No. 11, PageID 1056). This is not sufficient because "a record from a doctor's appointment containing merely a list of previous diagnoses does not amount to an a 'anatomical, physiological, or psychological abnormalit[y] which can be shown by medically acceptable clinical and laboratory diagnostic techniques…'" *Bryan v. Comm'r of Soc. Sec.*, No. 2:18-cv-554, 2019 WL 2021156, *5 (S.D. Ohio May 8, 2019) (Jolson, M.J.), report and recommendation adopted, 2019 WL 2912089, *3 (S.D. Ohio July 8, 2019) (Graham, D.J.). Likewise, while depression was similarly listed in the impression/plan section of records on occasion, physical examinations from those records reflect normal findings such that Plaintiff was "awake and alert," "in no acute distress," and that she was "pleasant, cooperative and appropriate." (Doc. No. 10-7, PageID 439). Ultimately, "[d]isability is determined by the functional limitations a condition imposes, not the mere diagnosis of a condition." *Bryan*,

2019 WL 2021156, at *6 (citing *Denham v. Comm'r of Soc. Sec.*, No. 1:14-cv-611, 2015 WL 5471435, at *11 (S.D. Ohio Sept. 18, 2015) (Litkovitz, M.J) (citation omitted).

The distinction between a medically determinable impairment and non-medically determinable impairment, as discussed above, is critical because its implications permeate the subsequent steps in the sequential evaluation process. Indeed, when a claimant is determined to have "at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). However, "a claimed condition which is not 'medically determinable' need not be considered at all." *Rouse v. Comm'r of Soc. Sec.*, No. 2:16-cv-223, 2017 WL 163384, at *4 (S.D. Ohio Jan. 17, 2017) (Kemp, M.J.), report and recommendation, adopted, 2017 WL 1102684 (S.D. Ohio March 24, 2017) (Marbley, D.J.). Accordingly, Plaintiff's depression, as a non-medically determinable impairment, did not need to be considered at later steps in the sequential evaluation process.

Yet, even if depression had been identified as a non-severe medically determinable impairment, no reversible error occurred. Plaintiff does not point to any medical opinion evidence or other evidence of record that demonstrates her depression causes any functional limitations. In fact, the medical opinion evidence reflects that there was insufficient evidence of a severe mental impairment. Nevertheless, the ALJ briefly discussed Plaintiff's depression at Step Four. As he recognized, state agency reviewing physicians, Drs. Todd Finnerty and Karla Delcour, indicated that due to the lack of evidence, they could not fully evaluate Plaintiff's mental health functioning. (Doc. No. 10-3, PageID 91, 102). Likewise, the ALJ found that Plaintiff's mental health treatment

7

had been extremely sparse. (Doc. No. 10-2, PageID 61). Accordingly, no reversible error occurred at Step Two, and Plaintiff's assertions to the contrary are unpersuasive.

### B. Past Relevant Work

Plaintiff further asserts that error occurred at Step Four in evaluating whether she is capable of performing her past relevant work as a daycare worker, which required her to be "constantly" around children. She contends that heart problems, risk of stroke and/or heart attack, and medication side effects render her incapable of constant contact.

A five-step sequential evaluation process is utilized in determining whether an individual is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). The burden is on the claimant through Step Four, and at Step Four, the claimant must prove "the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work..." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Past relevant work is work that a claimant has performed within the past fifteen years. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). If a claimant can perform past relevant work, then the claimant is not disabled. *Id.*

Indeed, at Step Four, Plaintiff was found to be capable of performing her past relevant work as a daycare worker as generally performed in the national economy, but not as she actually performed it. (Doc. No. 10-2, PageID 63). This was based on the vocational expert's testimony, which reflected that she could perform her past work as generally performed. *Id.* at 78. Plaintiff argues that this was in error because her past relevant work requires constant contact with children, and her physical and mental impairments render her incapable of maintaining this level of contact in her work. (Doc. No. 11, PageID 1058).

8

However, the determination as to Plaintiff's ability to perform her past relevant work is supported by substantial evidence. *See Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question but only if the question accurately portrays [the claimant's] individual physical and mental impairments.") (citations omitted) (internal quotations omitted). As noted above, the vocational expert testified at the hearing that Plaintiff was capable of performing her past relevant work as generally performed. (Doc. No. 10-2, PageID 78). This testimony was in response to a hypothetical that accurately portrayed Plaintiff's physical and mental impairments. *Id.*

The vocational expert also testified as to the level of contact that Plaintiff's past relevant work required. She testified that past relevant work would be eliminated if the individual was capable of only frequent interaction with supervisors, co-workers, and the general public because constant contact with children is required as a daycare worker. *Id.* at 78-79. Under this framework, children would be considered part of the general public. *Id.* at 78. Yet, as reflected in Plaintiff's residual functional capacity, she was not limited to frequent interaction with supervisors, co-workers, and the general public. *Id.* at 58.

In fact, her interactions with others were not limited at all. Plaintiff argues that her residual functional capacity should have reflected a limitation that would have limited the frequency of her contact with others. However, this argument is unpersuasive because it rests on alleged functional limitations that stem from her depression. Plaintiff does not cite to any evidence of record that would support such a limitation. And, as discussed extensively above, no error occurred in assessing her depression.

Additionally, there is no indication that Plaintiff is incapable of performing any of the specific duties set forth in the Dictionary of Occupational Titles. *See* DICOT 359.677-018, Nursery School Attendant. A daycare worker:

> Organizes and leads activities of prekindergarten children in nursery schools or in playrooms operated for patrons of theaters, department stores, hotels, and similar organizations: Helps children remove outer garments. Organizes and participates in games, reads to children, and teaches them simple painting, drawing, handwork, songs, and similar activities. Directs children in eating, resting, and toileting. Helps children develop habits of caring for own clothing and picking up and putting away toys and books. Maintains discipline. May serve meals and refreshments to children and regulate rest periods. May assist in preparing food and cleaning quarters[.]

DICOT 359.677-018 (G.P.O.), 1991 WL 672970. Plaintiff does not assert that she is incapable of performing any of the duties set forth above.

For these reasons, substantial evidence supports the Step Four determination that Plaintiff is capable of performing her past relevant work as a daycare worker. Accordingly, Plaintiff's Statement of Errors is without merit.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's non-disability finding is affirmed;

2. The case is terminated on the docket of this Court.

September 24, 2021                                  *s/Sharon L. Ovington*
                                                               Sharon L. Ovington
                                                               United States Magistrate Judge